PARO ASTOURIAN, ESQ. (SBN: 225488)
 paro@astourianlaw.com
JAMES R. GALLIVER, ESQ. (SBN: 246466)
 j.galliver@astourianlaw.com
**ASTOURIAN & ASSOCIATES, INC.**
301 N. Lake Ave., Suite 1000
Pasadena, CA 91101
Tel: (626) 795-7922
Fax: (626) 795-6884

**Attorneys for Plaintiff:**
**350 S. Los Angeles Street Partnership, L.P.**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 350 S. LOS ANGELES STREET PARTNERSHIP, L.P., a California limited partnership,<br><br>Plaintiff,<br><br>v.<br><br>NATIONWIDE MUTUAL INSURANCE COMPANY, an Ohio corporation; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No.: 2:23-cv-07284-HDV-AGRx<br><br>**DECLARATION OF SAEED FARKHONDEHPOUR IN SUPPORT OF PLAINTIFF 350 S. LOS ANGELES STREET PARTNERSHIP, L.P.'S OPPOSITION TO DEFENDANT NATIONWIDE MUTUAL INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:        June 27, 2024<br>Time:       10:00 a.m.<br>Crtrm:      5B<br>Judge:      Hon. Hernan D. Vera<br><br>Action Filed:       June 26, 2023<br>Action Removed:  September 1, 2023<br>Trial Date:         August 20, 2024 |

**DECLARATION OF SAEED FARKHONDEHPOUR**

I, Saeed Farkhondehpour, declare as follows:

1. I am the manager of plaintiff 350 S. Los Angeles Street Partnership, L.P. ("Plaintiff"). I have personal knowledge of the matters stated herein and if called as a witness I could and would testify thereto. The headings herein are for reference purposes only.

**The Property and the Subject Insurance Policy**

2. Plaintiff is the owner of the property commonly known as 350 S. Los Angeles Street, Los Angeles, California 90013 (the "Property"). Because the Property is located at the corner of Los Angeles Street and Boyd Street, the Property is also commonly known as 212 East Boyd Street, Los Angeles, California 90013.

3. Plaintiff is in the business of real estate and property management. Plaintiff leases the Property to various commercial tenants, including the tenants of the Property's units 212, 212A and 212B.

4. In or about March 31, 2021, defendant Nationwide Mutual Insurance Company ("Defendant") issued a commercial insurance policy No. APC CPP 7876108565 (the "Policy") to Plaintiff against losses to the Property. A true and correct copy of the relevant portions of the Policy that was produced by Defendant in this action is attached as Exhibit "A" to the declaration of Adrian Filip submitted by Defendant in support of its Motion and is incorporated herein by this reference.

5. Prior to the issuance of the Policy, I had caused Plaintiff to be insured by Defendant against losses to the Property, including loss of business income, since about 2014. At no point prior to Plaintiff's subject insurance claim for loss of business income did Defendant request a copy of Plaintiff's leases with its tenants at the Property.

**Plaintiff's Leases With Its Tenants at the Property**

6. As of January 2022, Plaintiff had written lease agreements with its three relevant tenants of the Property's units 212, 212A and 212B. Plaintiff leased unit 212 to The Nuts LLC, leased unit 212A to Jashua Allen Stork, and leased unit 212B to

Millenium Maters, Inc. ("Millenium"). Each of these written leases was signed by me. Plaintiff keeps copies of its tenants' lease agreements in the regular course of Plaintiff's business. Each of these tenants operated retail shops at the Property.

7. The leases of The Nuts LLC and Jashua Allen Stork were for specific periods. The Nuts LLC's lease was for the period November 15, 2021 through November 14, 2022. Jashua Allen Stork had been a tenant of Plaintiff since about March 2019, and his most recent lease with Plaintiff was for the period January 1, 2022 through December 31, 2022.

8. Millenium had been a tenant of Plaintiff since prior to 2010. In April 2010, Millenium entered into a new lease agreement with Plaintiff. At that time, Millenium's lease was for the period starting April 2010 through April 14, 2013. Millenium and Plaintiff subsequently entered into lease addendums that extended Millenium's lease periods. The last addendum extended Millenium's lease to the period ending April 14, 2017. No further leases or addendums were entered into between Plaintiff and Millenium. Rather, following April 14, 2017, Millenium was on a "month-to-month" tenancy with Plaintiff.

9. A true and correct copy of the first page of The Nuts LLC's lease with Plaintiff, identifying the lease period, is attached hereto as **Exhibit "1"** and is incorporated herein by this reference.

10. A true and correct copy of the first page of Jashua Allen Stork's lease with Plaintiff, identifying the lease period, is attached hereto as **Exhibit "2"** and is incorporated herein by this reference.

11. A true and correct copy of the first page of Millenium's lease with Plaintiff identifying the lease period, along with the addendums to Millenium's lease, is attached hereto collectively as **Exhibit "3"** and is incorporated herein by this reference.

12. At the time of the subject fire loss (referenced below), Millenium was about three months in arrears on its rent. However, Millenium was a long-time tenant of Plaintiff who, although paid rent late on occasion, would ultimately always become

current on its rent. Prior to the fire loss, I expected that Millenium would become current on its rent.

**The Fire Loss and Defendant's Denial of Plaintiff's Claim for Lost Rental Income**

13. On January 28, 2022, a fire occurred at the Property which severely damaged the Property's units 212, 212A, and 212B.

14. I caused Plaintiff to make a claim to Defendant for the physical damages to the Property, which Defendant covered.

15. Due to the fire loss, the Tenants of units 212, 212A and 212B ceased paying rent to Plaintiff and vacated their rental units.

16. The affected units of the Property were not restored until about October 2022, after which Plaintiff began leasing all three of the units (212, 212A and 212B) to a new tenant who required two months of free rent. Plaintiff, therefore, lost a total of eleven (11) months of rental income.

17. Following the fire, I caused Plaintiff to make a claim to Defendant for Plaintiff's loss of rental income.

18. In connection with Plaintiff's claim for loss of rental income, Defendant requested that Plaintiff provide Defendant with Plaintiff's lease agreements with its affected tenants. This was the first time that Defendant had requested copies of Plaintiff's lease agreements. In response to Defendant's request, I forwarded Plaintiff's lease agreements for units 212, 212A and 212B to Defendant.

19. Defendant denied Plaintiff's loss of rental income claim by letter dated December 20, 2022. A true and correct copy of Defendant's December 20, 2022 letter is attached hereto as **Exhibit "4"** and is incorporated herein by this reference.

20. I was surprised by Defendant's denial because Plaintiff had been paying premiums for loss of business income coverage under the Policy, while Defendant had not requested to inspect Plaintiff's lease agreements prior to Plaintiff's subject claim for loss of rental income. I had purchased Defendant's insurance for Plaintiff because I wanted Plaintiff to be covered for loss of rental income. In purchasing the loss of income

  coverage for Plaintiff, I had expected Plaintiff to be covered for this type of loss. At no point prior to Plaintiff's subject insurance claim was I informed by Defendant that Plaintiff having a non-abatement of rent clause in its leases with its tenants would bar coverage for loss of rental income.

  21. Following the fire loss, both Millenium and The Nuts LLC filed separate lawsuits against Plaintiff relating to the fire loss, filed respectively as Los Angeles Superior Court case numbers 23STCV05244 and 23STCV05320. Those actions allege that Plaintiff negligently caused the fire loss and damaged their businesses. I caused Plaintiff to tender its defense of those actions to Defendant, who accepted coverage and is defending Plaintiff in those actions which remain pending to date. Based on the online docket in these said tenant cases, there has to date been no cross-complaints filed in the same.

  I declare under penalty of perjury that the foregoing is true and correct.

  Executed this 9th day of May 2024, at Los Angeles, California.

              /s/ Saeed Farkhondehpour
              Saeed Farkhondehpour
              Manager, 1001 S. Olive, LLC

# EXHIBIT 1

EXHIBIT 1

# STANDARD INDUSTRIAL LEASE- SPECIAL NET
## AMERICAN INDUSTRIAL REAL ESTATE ASSOCIATION

1. **Parties.** This Lease, dated, for reference purposes only, **NOVENBER.4.2021**, is made by and between **350 S LO$ANGELES ST PARTNERSHIP, LP**(herein called "Lessor") and **THE NUTS-LLC** (herein called "Lessee").
2. **Premises.** Lessor hereby leases to Lessee and Lessee leases from Lessor for the term, at the rental, and upon all of the conditions set forth herein, that certain real property situated in the County of **LOS ANGELES** State of **CALIFORNIA**,
Commonly known as **212  EAST BOYD STREET, LOS ANGELES, CA 90013**
And described as_____**SAME AS ABOVE**.
**LESSEE ACKNOWLEDGES THAT LESSOR HAS MADE NO REPRESENTATION AS TO THE SIZE AND SQUARE FOOTAGE OF THE PREMISES, AND THE LESSEE HAS INSPECTED THE PREMISES AND HAS DONE HIS/HER MEASURING.**
Said real property including the land and all improvements therein, is herein called "the Premises".
3. **Term**
   3.1 **Term.** The term of this Lease shall be for **ONE (1) YEAR** commencing on **NOVENBER.15.2021** and ending on **NOVENBER.14.2022** unless sooner terminated pursuant to any provision hereof.
   3.2 **Delay In Possession.** Notwithstanding said commencement date, if for any reason Lessor cannot deliver possession of the Premises to Lessee on said date, Lessor shall not be subject to any liability therefore, nor shall such failure affect the validity of this Lease or the obligation of Lessee hereunder or extend the term hereof, but in such case, Lessee shall not be obligated to pay rent until possession of the Premises is tendered to Lessee; provided, however, that if Lessor shall not have delivered possession of the Premises within sixty (60) days from said commencement date, Lessee may, at Lessee's option, by notice in writing to Lessor within ten (10) days thereafter, cancel this Lease in which event the parties shall
be discharged from all obligations hereunder; provided further, however, that if such written notice of Lessee is not received by Lessor within said ten (10) day period, Lessee's right to cancel this Lease hereunder shall terminate and be of no further force or effect.
   3.3 **Early Possession.** If Lessee occupies the Premises prior to said commencement date, such occupancy shall be subject to all provisions Hereof, such occupancy shall not advance the termination date, and Lessee shall pay rent for such period at the initial monthly rates set forth below.
4. **Rent: Special Net Lease.**

   4.1 **Rent.** Lessee shall pay to Lessor as rent for the Premises, monthly payments of **$4.200.00,** in advance, on the **15TH day** of each month of the term hereof. Lessee shall pay Lessor upon the execution hereof **$4.200.00** as rent  For **NOVENBERL.15.2021 THRU DECEMBER.14.2021**

Rent for any period during the term hereof which is for less than one month shall be a pro rata portion of the monthly installment. Rent shall be payable in lawful money of the United States to Lessor at the address stated herein or to such other persons or at such other places as Lessor may designate in writing. Lessee has the right to inspect & request invoice & paid amount and allocation worksheet from lessor.

   4.2 **Special Net Lease.** This Lease is what is commonly called a "Net, Net, Net Lease", it being understood that the Lessor shall receive the rent set forth in Paragraph 4.1 free and clear of any and all other impositions, taxes, liens, charges or expenses of any nature whatsoever in connection with the ownership and operation of the Premises. In addition to the rent reserved by Paragraph 4.1, Lessee shall pay to the parties respectively entitled thereto all impositions, insurance premiums, operating charges, maintenance charges, construction costs and any other charges, costs, and expenses which arise or may be contemplated under any provisions of this Lease during the term hereof. All of such charges, costs and expenses shall constitute additional rent, and upon the failure of Lessee to pay any of such costs, charges or expenses, Lessor shall have the same rights and remedies as otherwise provided in this Lease for the failure of Lessee to pay rent. It is the intention of the parties hereto that this Lease shall not be terminable for any reason by the Lessee, and that Lessee shall in no event be entitled to any abatement of or reduction in rent payable under this Lease, except as herein expressly provided. Any present or future law to the contrary shall not alter this agreement of the parties.
5. **Security Deposit.** Lessee shall deposit with Lessor upon execution hereof **$8.400.00** as security for Lessee's faithful the performance of Lessee's obligations hereunder. If Lessee fails to pay rent or other charges due hereunder, or otherwise defaults with respect to any provision of this Lease, Lessor may use, apply or retain all or any portion of said deposit for the payment of any rent or other charge in default or for the payment of any other sum to which Lessor may become obligated by reason of Lessee's default, or to compensate Lessor for any loss or damage which Lessor may suffer thereby. If Lessor so uses or applies all or any portion of said deposit, Lessee shall within ten (10) days after written demand therefore deposit cash with Lessor in an amount sufficient to restore said deposit to the full amount herein above stated and Lessee's failure to do so shall be a material breach of this Lease. If the monthly rent shall, from time to time, increase during the term of this Lease, Lessee shall thereupon deposit with Lessor additional security deposit so that the amount of security deposit held by Lessor shall at all times bear the same proportion to current rent as the original security deposit bears to the original monthly rent set forth in paragraph 4 hereof. Lessor shall not be required to keep said deposit separate from its general accounts. If Lessee performs all of Lessee's obligations hereunder, said deposit, or so much thereof as has not therefore been applied by Lessor, shall be returned, without payment of interest or other increment for its use, to Lessee (or, at Lessor's option, to the last assignee, if any, of Lessee's interest hereunder) at the expiration of the term hereof, and after Lessee has vacated the Premises. No trust relationship is created herein between Lessor and Lessee with respect to said Security Deposit.
6. **Use.**
   6.1 **Use.** The Premises shall be used and occupied only for ___**GENERAL MERCHANDISE**_____
any other use which is reasonably comparable and for no other purpose.
   6.2 **Compliance with Law.**
   (a) Lessor warrants to Lessee that the Premises, in its state existing on the date that the Lease term commences, but without regard to the use for which Lessee will use the Premises, does not violate any covenants or restrictions of record, or any applicable building code regulation or ordinance in effect on such Lease term commencement date. In the event it is determined that this warranty has been violated, then shall be the obligation of the Lessor, after written notice from Lessee, to promptly, at Lessor's sole cost and expense, rectify any such violation. In the event Lessee does not give to Lessor written notice of the violation of this warranty within six months from the date that the Lease term commences, the correction of same shall be the obligation of the Lessee at Lessee's sole cost. The warranty contained in this paragraph 6.2(a) shall be of no force or effect if, prior to the date of this Lease, Lessee was the owner or occupant of the Premises, and, in such event, Lessee shall correct any such violation at Lessee's sole cost.
   (b) Except as provided in paragraph 6.2(a), Lessee shall, at Lessee's expense, comply promptly with all applicable statutes, ordinances, rules, regulations, orders, covenants and restrictions of record, and requirements in effect during the term or any part of the term hereof, regulating the use by Lessee of the Premises. Lessee shall not use nor permit the use of the Premises in any manner that will tend to create waste or a nuisance or, if there shall be more than one tenant in the building containing the Premises, shall tend to disturb such other tenants.
   6.3 **Condition of Premises.**
   (a) Lessor shall deliver the Premises to Lessee clean and free of debris on Lease commencement date (unless Lessee is already in possession) and Lessor further warrants to Lessee that the plumbing, lighting, air conditioning, heating, and loading doors in the Premises shall be in good operating condition on the Lease commencement date. In the event that it is determined that this warranty has been violated, then it shall be the obligation of Lessor, after receipt of written notice from Lessee setting forth with specificity the nature of the violation, to promptly, at Lessor's sole cost, rectify such violation. Lessee's failure to give such written notice to Lessor within thirty (30) days after the Lease commencement date shall cause the conclusive presumption that Lessor has compiled with all of Lessor's obligations hereunder. The warranty contained in this paragraph 6.3 (a) shall be of no force or effect if prior to the date of this Lease, Lessee was the owner or occupant of the Premises.
   (b) Except as otherwise provided in this Lease, Lessee hereby accepts the Premises in their condition existing as of the Lease commencement date or the date that Lessee takes possession of the Premises, whichever is earlier, subject to all applicable zoning, municipal, county and state laws, ordinances and regulations governing and regulating the use of the Premises, and any covenants or restrictions of record, and accepts this Lease subject thereto and to all matters disclosed thereby and by any exhibits attached hereto. Lessee acknowledges that neither Lessor nor Lessor's agent has made any representation or warranty as to the present or future suitability of the Premises for the conduct of Lessee's business.

**SPECIAL NET**
*(This is a special form containing unique provisions and should only be used in special situations where the LESSEE will pay rent under all circumstances and in the event of destruction the LESSEE will rebuild under all circumstances.)*

Initials: __A.S.__

__P.Z.__

7. **Maintenance, Repairs and Alterations.**

# EXHIBIT 2

EXHIBIT 2

# STANDARD INDUSTRIAL LEASE – SPECIAL NET
## AMERICAN INDUSTRIAL REAL ESTATE ASSOCIATION

1. **Parties.** This Lease, dated, for reference purposes only, **DECEMBER.20.2021**, is made by and between **350 SOUTH LOS ANGELES ST PARTNERSHIP, LP**(herein called "Lessor") and **JASHUA ALLEN STORK** (herein called "Lessee").
2. **Premises.** Lessor hereby leases to Lessee and Lessee leases from Lessor for the term, at the rental, and upon all of the conditions set forth herein, that certain real property situated in the County of **LOS ANGELES** State of **CALIFORNIA**,
Commonly known as **212-A EAST BOYD STREET, LOS ANGELES, CA 90013**
And described as_____**SAME AS ABOVE.**
**LESSEE ACKNOWLEDGES THAT LESSOR HAS MADE NO REPRESENTATION AS TO THE SIZE AND SQUARE FOOTAGE OF THE PREMISES, AND THE LESSEE HAS INSPECTED THE PREMISES AND HAS DONE HIS/HER MEASURING.**
Said real property including the land and all improvements therein, is herein called "the Premises".
3. **Term**
    3.1 **Term.** The term of this Lease shall be for **ONE (1) YEAR** commencing on **JANUARY.1.2022** and ending on **DECEMBER.31.2022** unless sooner terminated pursuant to any provision hereof.
    3.2 **Delay In Possession.** Notwithstanding said commencement date, if for any reason Lessor cannot deliver possession of the Premises to Lessee on said date, Lessor shall not be subject to any liability therefore, nor shall such failure affect the validity of this Lease or the obligation of Lessee hereunder or extend the term hereof, but in such case, Lessee shall not be obligated to pay rent until possession of the Premises is tendered to Lessee; provided, however, that if Lessor shall not have delivered possession of the Premises within sixty (60) days from said commencement date, Lessee may, at Lessee's option, by notice in writing to Lessor within ten (10) days thereafter, cancel this Lease in which event the parties shall
be discharged from all obligations hereunder; provided further, however, that if such written notice of Lessee is not received by Lessor within said ten (10) day period, Lessee's right to cancel this Lease hereunder shall terminate and be of no further force or effect.
    3.3 **Early Possession.** If Lessee occupies the Premises prior to said commencement date, such occupancy shall be subject to all provisions Hereof, such occupancy shall not advance the termination date, and Lessee shall pay rent for such period at the initial monthly rates set forth below.
4. **Rent: Special Net Lease.**
    4.1 **Rent.** Lessee shall pay to Lessor as rent for the Premises, monthly payments of **$4.200.00,** in advance, on the **1TH day** of each month of the term hereof. Lessee shall pay Lessor upon the execution hereof **$4.200.00** as rent For **JANUARYL.1.2022 THRU JANUARY..31.2022**

Rent for any period during the term hereof which is for less than one month shall be a pro rata portion of the monthly installment. Rent shall be payable in lawful money of the United States to Lessor at the address stated herein or to such other persons or at such other places as Lessor may designate in writing. Lessee has the right to inspect & request invoice & paid amount and allocation worksheet from lessor.
    4.2 **Special Net Lease.** This Lease is what is commonly called a "Net, Net, Net Lease", it being understood that the Lessor shall receive the rent set forth in Paragraph 4.1 free and clear of any and all other impositions, taxes, liens, charges or expenses of any nature whatsoever in connection with the ownership and operation of the Premises. In addition to the rent reserved by Paragraph 4.1, Lessee shall pay to the parties respectively entitled thereto all impositions, insurance premiums, operating charges, maintenance charges, construction costs and any other charges, costs, and expenses which arise or may be contemplated under any provisions of this Lease during the term hereof. All of such charges, costs and expenses shall constitute additional rent, and upon the failure of Lessee to pay any of such costs, charges or expenses, Lessor shall have the same rights and remedies as otherwise provided in this Lease for the failure of Lessee to pay rent. It is the intention of the parties hereto that this Lease shall not be terminable for any reason by the Lessee, and that Lessee shall in no event be entitled to any abatement of or reduction in rent payable under this Lease, except as herein expressly provided. Any present or future law to the contrary shall not alter this agreement of the parties.
5. **Security Deposit.** Lessee shall deposit with Lessor upon execution hereof **$8.400.00** as security for Lessee's faithful the performance of Lessee's obligations hereunder. If Lessee fails to pay rent or other charges due hereunder, or otherwise defaults with respect to any provision of this Lease, Lessor may use, apply or retain all or any portion of said deposit for the payment of any rent or other charge in default or for the payment of any other sum to which Lessor may become obligated by reason of Lessee's default, or to compensate Lessor for any loss or damage which Lessor may suffer thereby. If Lessor so uses or applies all or any portion of said deposit, Lessee shall within ten (10) days after written demand therefore deposit cash with Lessor in an amount sufficient to restore said deposit to the full amount herein above stated and Lessee's failure to do so shall be a material breach of this Lease. If the monthly rent shall, from time to time, increase during the term of this Lease, Lessee shall thereupon deposit with Lessor additional security deposit so that the amount of security deposit held by Lessor shall at all times bear the same proportion to current rent as the original security deposit bears to the original monthly rent set forth in paragraph 4 hereof. Lessor shall not be required to keep said deposit separate from its general accounts. If Lessee performs all of Lessee's obligations hereunder, said deposit, or so much thereof as has not therefore been applied by Lessor, shall be returned, without payment of interest or other increment for its use, to Lessee (or, at Lessor's option, to the last assignee, if any, of Lessee's interest hereunder) at the expiration of the term hereof, and after Lessee has vacated the Premises. No trust relationship is created herein between Lessor and Lessee with respect to said Security Deposit.
6. **Use.**
    6.1 **Use.** The Premises shall be used and occupied only for _____**GENERAL MERCHANDISE**_____
any other use which is reasonably comparable and for no other purpose.
    6.2 **Compliance with Law.**
        (a) Lessor warrants to Lessee that the Premises, in its state existing on the date that the Lease term commences, but without regard to the use for which Lessee will use the Premises, does not violate any covenants or restrictions of record, or any applicable building code regulation or ordinance in effect on such Lease term commencement date. In the event it is determined that this warranty has been violated, then shall be the obligation of the Lessor, after written notice from Lessee, to promptly, at Lessor's sole cost and expense, rectify any such violation. In the event Lessee does not give to Lessor written notice of the violation of this warranty within six months from the date that the Lease term commences, the correction of same shall be the obligation of the Lessee at Lessee's sole cost. The warranty contained in this paragraph 6.2(a) shall be of no force or effect if, prior to the date of this Lease, Lessee was the owner or occupant of the Premises, and, in such event, Lessee shall correct any such violation at Lessee's sole cost.
        (b) Except as provided in paragraph 6.2(a), Lessee shall, at Lessee's expense, comply promptly with all applicable statutes, ordinances, rules, regulations, orders, covenants and restrictions of record, and requirements in effect during the term or any part of the term hereof, regulating the use by Lessee of the Premises. Lessee shall not use nor permit the use of the Premises in any manner that will tend to create waste or a nuisance or, if there shall be more than one tenant in the building containing the Premises, shall tend to disturb such other tenants.
    6.3 **Condition of Premises.**
        (a) Lessor shall deliver the Premises to Lessee clean and free of debris on Lease commencement date (unless Lessee is already in possession) and Lessor further warrants to Lessee that the plumbing, lighting, air conditioning, heating, and loading doors in the Premises shall be in good operating condition on the Lease commencement date. In the event that it is determined that this warranty has been violated, then it shall be the obligation of Lessor, after receipt of written notice from Lessee setting forth with specificity the nature of the violation, to promptly, at Lessor's sole cost, rectify such violation. Lessee's failure to give such written notice to Lessor within thirty (30) days after the Lease commencement date shall cause the conclusive presumption that Lessor has complied with all of Lessor's obligations hereunder. The warranty contained in this paragraph 6.3 (a) shall be of no force or effect if prior to the date of this Lease, Lessee was the owner or occupant of the Premises.
        (b) Except as otherwise provided in this Lease, Lessee hereby accepts the Premises in their condition existing as of the Lease commencement date or the date that Lessee takes possession of the Premises, whichever is earlier, subject to all applicable zoning, municipal, county and state laws, ordinances and regulations governing and regulating the use of the Premises, and any covenants or restrictions of record, and accepts this Lease subject thereto and to all matters disclosed thereby and by any exhibits attached hereto. Lessee acknowledges that neither Lessor nor Lessor's agent has made any representation or warranty as to the present or future suitability of the Premises for the conduct of Lessee's business.

**SPECIAL NET**
*(This is a special form containing unique provisions and should only be used in special situations where the LESSEE will pay rent under all circumstances and in the event of destruction the LESSEE will rebuild under all circumstances.)*

Initials: _____

7. **Maintenance, Repairs and Alterations.**

# EXHIBIT 3

EXHIBIT 3

# STANDARD INDUSTRIAL LEASE — SPECIAL NET
## AMERICAN INDUSTRIAL REAL ESTATE ASSOCIATION

1. **Parties.** This Lease, dated, for reference purposes only, **MAY 6, 2010**, is made by and between **350 S. LOS ANGELES ST. PARTNERSHIP, LP** (herein called "Lessor") and **MILLENIUM MASTERS, INC.** (herein called "Lessee").
2. **Premises.** Lessor hereby leases to Lessee and Lessee leases from Lessor for the term, at the rental, and upon all of the conditions set forth herein, that certain real property situated in the County of **LOS ANGELES** State of **CALIFORNIA**,
Commonly known as **212-B EAST BOYD STREET, LOS ANGELES, CA 90013**
And described as          **SAME AS ABOVE**.
<u>LESSEE ACKNOWLEDGES THAT LESSOR HAS MADE NO REPRESENTATION AS TO THE SIZE AND SQUARE FOOTAGE OF THE PREMISES, AND THE LESSEE HAS INSPECTED THE PREMISES AND HAS DONE HIS/HER MEASURING.</u>
Said real property including the land and all improvements therein, is herein called "the Premises".
3. **Term.**
    3.1 **Term.** The term of this Lease shall be for **THREE (3) YEARS** commencing on **APRIL 15, 2010** and ending on **APRIL 14, 2013** unless sooner terminated pursuant to any provision hereof.
    3.2 **Delay In Possession.** Notwithstanding said commencement date, if for any reason Lessor cannot deliver possession of the Premises to Lessee on said date, Lessor shall not be subject to any liability therefore, nor shall such failure affect the validity of this Lease or the obligation of Lessee hereunder or extend the term hereof, but in such case, Lessee shall not be obligated to pay rent until possession of the Premises is tendered to Lessee; provided, however, that if Lessor shall not have delivered possession of the Premises within sixty (60) days from said commencement date, Lessee may, at Lessee's option, by notice in writing to Lessor within ten (10) days thereafter, cancel this Lease in which event the parties shall
be discharged from all obligations hereunder; provided further, however, that if such written notice of Lessee is not received by Lessor within said ten (10) day period, Lessee's right to cancel this Lease hereunder shall terminate and be of no further force or effect.
    3.3 **Early Possession.** If Lessee occupies the Premises prior to said commencement date, such occupancy shall be subject to all provisions Hereof, such occupancy shall not advance the termination date, and Lessee shall pay rent for such period at the initial monthly rates set forth below.
4. **Rent: Special Net Lease.**
    4.1 **Rent.** Lessee shall pay to Lessor as rent for the Premises, monthly payments of **$3,200.00**, in advance, on the **15TH** day of each month of the term hereof. Lessee shall pay Lessor upon the execution hereof **$3,200.00** as rent  For **APRIL 15, 2010 THRU MAY 14, 2010**

Rent for any period during the term hereof which is for less than one month shall be a pro rata portion of the monthly installment. Rent shall be payable in lawful money of the United States to Lessor at the address stated herein or to such other persons or at such other places as Lessor may designate in writing. Lessee has the right to inspect & request invoice & paid amount and allocation worksheet from lessor.
    4.2 **Special Net Lease.** This Lease is what is commonly called a "Net, Net, Net Lease", it being understood that the Lessor shall receive the rent set forth in Paragraph 4.1 free and clear of any and all other impositions, taxes, liens, charges or expenses of any nature whatsoever in connection with the ownership and operation of the Premises. In addition to the rent reserved by Paragraph 4.1, Lessee shall pay to the parties respectively entitled thereto all impositions, insurance premiums, operating charges, maintenance charges, construction costs and any other charges, costs, and expenses which arise or may be contemplated under any provisions of this Lease during the term hereof. All of such charges, costs and expenses shall constitute additional rent, and upon the failure of Lessee to pay any of such costs, charges or expenses, Lessor shall have the same rights and remedies as otherwise provided in this Lease for the failure of Lessee to pay rent. It is the intention of the parties hereto that this Lease shall not be terminable for any reason by the Lessee, and that Lessee shall in no event be entitled to any abatement of or reduction in rent payable under this Lease, except as herein expressly provided. Any present or future law to the contrary shall not alter this agreement of the parties.
5. **Security Deposit.** Lessee shall deposit with Lessor upon execution hereof **$6,040.00** as security for Lessee's faithful the performance of Lessee's obligations hereunder. If Lessee fails to pay rent or other charges due hereunder, or otherwise defaults with respect to any provision of this Lease, Lessor may use, apply or retain all or any portion of said deposit for the payment of any rent or other charge in default or for the payment of any other sum to which Lessor may become obligated by reason of Lessee's default, or to compensate Lessor for any loss or damage which Lessor may suffer thereby. If Lessor so uses or applies all or any portion of said deposit, Lessee shall within ten (10) days after written demand therefore deposit cash with Lessor in an amount sufficient to restore said deposit to the full amount herein above stated and Lessee's failure to do so shall be a material breach of this Lease. If the monthly rent shall, from time to time, increase during the term of this Lease, Lessee shall thereupon deposit with Lessor additional security deposit so that the amount of security deposit held by Lessor shall at all times bear the same proportion to current rent as the original security deposit bears to the original monthly rent set forth in paragraph 4 hereof. Lessor shall not be required to keep said deposit separate from its general accounts. If Lessee performs all of Lessee's obligations hereunder, said deposit, or so much thereof as has not therefore been applied by Lessor, shall be returned, without payment of interest or other increment for its use, to Lessee (or, at Lessor's option, to the last assignee, if any, of Lessee's interest hereunder) at the expiration of the term hereof, and after Lessee has vacated the Premises. No trust relationship is created herein between Lessor and Lessee with respect to said Security Deposit.
6. **Use.**
    6.1 **Use.** The Premises shall be used and occupied only for   **GENERAL MERCHANDISE**
or any other use which is reasonably comparable and for no other purpose.
    6.2 **Compliance with Law.**
        (a) Lessor warrants to Lessee that the Premises, in its state existing on the date that the Lease term commences, but without regard to the use for which Lessee will use the Premises, does not violate any covenants or restrictions of record, or any applicable building code regulation or ordinance in effect on such Lease term commencement date. In the event it is determined that this warranty has been violated, then shall be the obligation of the Lessor, after written notice from Lessee, to promptly, at Lessor's sole cost and expense, rectify any such violation. In the event Lessee does not give to Lessor written notice of the violation of this warranty within six months from the date that the Lease term commences, the correction of same shall be the obligation of the Lessee at Lessee's sole cost. The warranty contained in this paragraph 6.2(a) shall be of no force or effect if, prior to the date of this Lease, Lessee was the owner or occupant of the Premises, and, in such event, Lessee shall correct any such violation at Lessee's sole cost.
        (b) Except as provided in paragraph 6.2(a), Lessee shall, at Lessee's expense, comply promptly with all applicable statutes, ordinances, rules, regulations, orders, covenants and restrictions of record, and requirements in effect during the term or any part of the term hereof, regulating the use by Lessee of the Premises. Lessee shall not use nor permit the use of the Premises in any manner that will tend to create waste or a nuisance or, if there shall be more than one tenant in the building containing the Premises, shall tend to disturb such other tenants.
    6.3 **Condition of Premises.**
        (a) Lessor shall deliver the Premises to Lessee clean and free of debris on Lease commencement date (unless Lessee is already in possession) and Lessor further warrants to Lessee that the plumbing, lighting, air conditioning, heating, and loading doors in the Premises shall be in good operating condition on the Lease commencement date. In the event that it is determined that this warranty has been violated, then it shall be the obligation of Lessor, after receipt of written notice from Lessee setting forth with specificity the nature of the violation, to promptly, at Lessor's sole cost, rectify such violation. Lessee's failure to give such written notice to Lessor within thirty (30) days after the Lease commencement date shall cause the conclusive presumption that Lessor has complied with all of Lessor's obligations hereunder. The warranty contained in this paragraph 6.3 (a) shall be of no force or effect if prior to the date of this Lease, Lessee was the owner or occupant of the Premises.
        (b) Except as otherwise provided in this Lease, Lessee hereby accepts the Premises in their condition existing as of the Lease commencement date or the date that Lessee takes possession of the Premises, whichever is earlier, subject to all applicable zoning, municipal, county and state laws, ordinances and regulations governing and regulating the use of the Premises, and any covenants or restrictions of record, and accepts this Lease subject thereto and to all matters disclosed thereby and by any exhibits attached hereto. Lessee acknowledges that neither Lessor nor Lessor's agent has made any representation or warranty as to the present or future suitability of the Premises for the conduct of Lessee's business.

**SPECIAL NET**
*(This is a special form containing unique provisions and should only be used in special situations where the LESSEE will pay rent under all circumstances and in the event of destruction the LESSEE will rebuild under all circumstances.)*

Initials: _D. M_
_____

-1-

# ADDENDUM

THIS IS A AN ADDENDUM TO THE LEASE DATED MAY 6, 2010 BY AND BETWEEN **350 S. LOS ANGELES ST. PARTNERSHIP, LP** AS LESSOR AND **MILLENIUM MASTERS, INC.** AS LESSEE FOR THE STORE AT **212-B EAST BOYD ST., LOS ANGELES, CALIFORNIA.**

LESSOR AND LESSEE HEREBY MUTUALLY AGREE TO EXTEND THE ABOVE LEASE FOR AN ADDITIONAL PERIOD OF ONE (1) YEAR STARTING APRIL 15, 2013 AND ENDING APRIL 14, 2014. FOR THE EXTENDED PERIOD RENT SHALL BE AS FOLLOWS:

**APRIL 15, 2013 THRU APRIL 14, 2014:   $ 3,360.00 PER MONTH**

**ALL OTHER TERMS AND CONDITIONS SHALL REMAIN THE SAME.**

DATED _____5/9/13_____

_____
SAEED FARKHONDEHPOUR
LESSOR

_____
MILLENIUM MASTERS, INC.
LESSEE

# ADDENDUM

THIS IS AN ADDENDUM TO THE LEASE DATED MAY 6, 2010 BY AND BETWEEN **350 S. LOS ANGLEES ST. PARTNERSHIP, LP** AS LESSOR AND **MILLENIUM MASTERS, INC.** AS LESSEE FOR THE STORE AT **212-B EAST BOYD, ST., LOS ANGELES, CALFORNIA.**

LESSOR AND LESSEE HEREBY MUTUALLY AGREE TO EXTEND THE ABOVE LEASE FOR AN ADDITIONAL PERIOD OF TWO (2) YEARS STARTING APRIL 15, 2015 AND ENDING APRIL 14, 2017. MONTHLY RENT FOR THE EXTENDED PERIOD SHALL BE AS FOLLOWS:

| | |
|---|---|
| **APRIL 15, 2015 TO APRIL 14, 2016:** | **$3,200.00** |
| **APRIL 15, 2016 TO APRIL 14, 2017:** | **$3,296.00** |

**ALL OTHER TERMS AND CONDITIONS SHALL REMAIN THE SAME.**

DATED  3/23/15

_____         _____
SAEED FARKHONDEHPOUR                              MILLENIUM MASTERS, INC.
LESSOR                                                           LESSEE

# EXHIBIT 4

EXHIBIT 4

Nationwide

350 SOUTH LOS ANGELES STREET PARTNERSHIP
Page **1** of 5

| | |
|---|---|
| **Date prepared** | December 20, 2022 |
| **Claim number** | 899662-GM |
| **Policy number** | ACP CPP 7876108565 |
| **Questions?** | Contact Claims Associate Adrian Filip FILIPA1@nationwide.com Phone 714-589-9365 Fax 844-721-2929 |

350 SOUTH LOS ANGELES STREET PARTNERSHIP
1001 TOWNE AVE STE 401
LOS ANGELES, CA  90021-2094

## Claim details

| | |
|---|---|
| Insurer: | Nationwide Mutual Insurance Company |
| Policyholder: | 350  SOUTH LOS ANGELES STREET PARTNERSHIP |
| Claim number: | 899662-GM |
| Loss date: | January 28, 2022 |
| Loss location: | 350 S Los Angeles Street, Los Angeles, CA 90013 |

Dear 350 SOUTH LOS ANGELES STREET PARTNERSHIP,

We have reviewed the facts of the loss in the context of coverage issued to you by Nationwide Mutual Insurance Company ("Nationwide").

## FACTS

A fire occurred on or about January 28, 2022.

The 350 South Los Angeles Street Partnership lease agreements state "**9.4 Abatement of Rent.** Notwithstanding the partial or total destruction of the Premises and any part thereof, and notwithstanding whether the casualty is insured or not, there shall be no abatement of rent or of any other obligation of Lessee hereunder by reason of such damage or destruction unless the Lease is terminated by virtue of any other provision of this Lease."  We have been unable to find another Lease provision that would terminate the Lease due to a fire loss.

A claim was made by your Public Adjuster Denise Sze for Business Income.  We requested that you and she provide us the Lease Provision that will cancel the lease due to a fire.  We have not received any documentation or clarification from either you or your public adjuster showing that the Business Income is owed pursuant to the lease agreements provided.

## THE POLICY

Nationwide Mutual Insurance Company policy number ACP CPP 7876108565 effective 03/31/2021 to 03/31/2022 provides coverage under BUILDING AND PERSONAL PROPERTY COVERAGE FORM CP 0010 1012 and BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM CP 0030 1012 and COMMERCIAL PROPERTY CONDITIONS CP 7067 0194.

Your policy contains the following language in pertinent part:

# BUSINESS INCOME (anD EXTRA EXPENSE)  COVERAGE FORM - CP 0030 1012

350 SOUTH LOS ANGELES STREET PARTNERSHIP
Claim # 899662-GM
Page **2** of 5

. . .

### A. Coverage
#### 1. Business Income
Business Income means the:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses incurred, including payroll.

For manufacturing risks, Net Income includes the net sales value of production.

Coverage is provided as described and limited below for one or more of the following options for which a Limit of Insurance is shown in the Declarations:

**(1)** Business Income Including "Rental Value".
**(2)** Business Income Other Than "Rental Value".
**(3)** "Rental Value".

If option **(1)** above is selected, the term Business Income will include "Rental Value". If option **(3)** above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

**(a)** The portion of the building which you rent, lease or occupy; and

**(b)** Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

. . .

**(2) "Rental Value"**

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

**(a)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

**(b)** Ends on the earlier of:

**(i)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

**(ii)** 30 consecutive days after the date determined in **(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

. . .

350 SOUTH LOS ANGELES STREET PARTNERSHIP
Claim # 899662-GM
Page **3** of 5

**C. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

. . .

**2. Duties In The Event Of Loss**

    **a.** You must see that the following are done in the event of loss:

        **(1)** Notify the police if a law may have been broken.

        **(2)** Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

        **(3)** As soon as possible, give us a description of how, when, and where the direct physical loss or damage occurred.

        **(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

        **(5)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.
Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

        **(6)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

        **(7)** Cooperate with us in the investigation or settlement of the claim.

        **(8)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

    **b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**3. Loss Determination**

    **a.** The amount of Business Income loss will be determined based on:

        **(1)** The Net Income of the business before the direct physical loss or damage occurred;

        **(2)** The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

        **(3)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

        **(4)** Other relevant sources of information, including:

           **(a)** Your financial records and accounting procedures;

           **(b)** Bills, invoices and other vouchers; and

           **(c)** Deeds, liens or contracts.

. . .

**F. Definitions**

. . .

**2.** "Operations" means:
   **a.** Your business activities occurring at the described premises; and
   **b.** The tenantability of the described premises, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.
**3.** "Period of restoration" means the period of time that:
   **a.** Begins:
      **(1)** 72 hours after the time of direct physical loss or damage for Business Income Coverage; or
      **(2)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;
   caused by or resulting from any Covered Cause of Loss at the described premises; and
   **b.** Ends on the earlier of:
      **(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
      **(2)** The date when business is resumed at a new permanent location.
"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:
      **(1)** Regulates the construction, use or repair, or requires the tearing down, of any property; or
      **(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".
The expiration date of this policy will not cut short the "period of restoration".
**5.** "Rental Value" means Business Income that consists of:
   **a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and
   **b.** Continuing normal operating expenses incurred in connection with that premises, including:
      **(1)** Payroll; and
      **(2)** The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

. . .

## COMMERCIAL PROPERTY CONDITIONS - CP 7067 0194

. . .

   D.   LEGAL ACTION AGAINST US
      No one may bring a legal action against us under this Coverage Part unless:
         1. There has been full compliance with all of the terms of this Coverage Part; and
      2. The action is brought within 1 year after the date on which the direct physical loss or damage occurred.

. . .

**CONCLUSION**

- The policy provides for loss of "Rental Value" which means the Net Income that would have been earned or incurred as rental income from tenant occupancy of the premises described in the

Declarations.  The Lease Agreement that you and your tenant executed requires that the tenant continues the rent payments during the fire loss which means that a loss of rental income cannot be incurred.   As such, there is no loss of income and therefore we must decline payment for your loss of income.

We are committed to all of our policyholders during and at the conclusion of the claims handling process.  Should you not feel satisfied with the handling of your claim, please contact me immediately.  If you believe your claim was wrongfully rejected or denied, you may have the matter reviewed by the following state agency:

California Department of Insurance - Claims Services Bureau
300 South Spring Street, 11th Floor
Los Angeles, CA 900132
Ph: 213-897-8921 or 800-927-4357
www.insurance.ca.gov

Based upon the Policy Conditions, and the time allowed to investigate this claim, you would have until December 22, 2023 to bring legal action against the company.

Neither this letter, nor any investigation conducted by us is intended as, nor should it be construed as a waiver of any terms, conditions, limitations or provisions of the above referenced policy of insurance, a waiver of any of our insured member's obligations under the policy, a waiver of any defenses now or hereafter available to Nationwide Mutual Insurance Company.  Any action we have taken in the past, take now, or take in the future is not intended as, nor should it be deemed as a waiver of any of our rights or our insured member's obligations under the insurance policy.  Nationwide Mutual Insurance Company reserves all of its rights as provided by the insurance policy and the applicable law.

### For more information

If you have any questions or concerns, please contact me at 714-589-9365 or FILIPA1@nationwide.com.

Sincerely,

Adrian Filip
Nationwide Mutual Insurance Company
P.O. Box 182068
Columbus, OH 43218-2068

cc
The Greenspan Co / Adjusters International


For your protection California law requires the following to appear on this form: Any person who knowingly presents false or fraudulent information to obtain or amend insurance coverage or to make a claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.